IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

MARIA M. THOMPSON,  )
              )
    Plaintiff,  )   No. CV 01-053-TUC-FRZ (BPV)
vs.  )
  )
  ) **REPORT AND RECOMMENDATION**
CITY OF TUCSON WATER  )
DEPARTMENT,  )
  )
    Defendant.  )
_____)

By Order of the District Court dated February 28, 2007 (Doc. No. 146), this action is referred to the undersigned Magistrate Judge pursuant to Rule 72(b) and Rule 54(d)(2)(D) of the Federal Rules of Civil Procedure to issue a report and recommendation pertaining to the post-judgment motion for attorney's fees.

For the reasons stated herein, the Magistrate Judge recommends that the District Court GRANT IN PART and DENY IN PART Plaintiffs' Supplemental Motion for Attorney's Fees and Related Non-Taxable Expenses (Doc. No. 143) and award Plaintiffs attorney's fees in the amount of $117,053.10.

**I.    FACTUAL & PROCEDURAL HISTORY**

Plaintiffs filed a lawsuit against Defendant City of Tucson Water Department and Defendants Modeer, Mike Ring, and Marie Pearthree (the Individual Defendants). Plaintiffs' amended complaint alleged that, while employed as a Water Treatment Operator with the City of Tucson in July 1997, Plaintiff Maria Thompson "witnessed and was requested to participate in hazardous and illegal activities involving the clean-up and unlawful transportation of sulphuric acid" by the City Water Department, that she refused to participate in these activities, and that she reported these activities to the

Tucson Fire Department.  Ms. Thompson claimed that, thereafter, her supervisors and co-employees subjected her to a pattern of continuous discriminatory harassment, which ultimately resulted in her discharge, because she reported the allegedly illegal conduct to the Tucson Fire Department and refused to participate in the allegedly illegal activities.

Plaintiffs alleged thirteen counts against Defendants: a claim under 42 U.S.C. § 1983, a claim under the Americans with Disabilities Act, and eleven state law claims. The Court granted summary judgment to Defendants on the majority of the claims: the Court granted summary judgment to the City on all of the counts except the negligence claim and a portion of the breach of contract claim, and to the Individual Defendants on all of the counts except a portion of the § 1983 claim.

The remaining claims were presented to a jury.  After the Plaintiffs presented their case, Defendants moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.  The Court granted judgment to the City on Thompson's breach of contract claim, and took under advisement the remainder of the motion.  At the close of all the evidence, Defendants orally renewed their Rule 50(a) motion.  The Court again took the motion under advisement.

The case was submitted to the jury, which returned a verdict for the City and for Defendants Modeer and Pearthree.  The jury returned a verdict against Defendant Ring on Thompson's § 1983 claim, awarding the Thompsons $30,000 in compensatory damages and $50,000 in punitive damages.

Thereafter, Plaintiffs moved for attorney's fees in the amount of $150,000 and related non-taxable expenses in the amount of $15,000.

Defendants the Rings renewed their motion for judgment as a matter of law, contending that they were entitled to judgment as a matter of law on grounds of qualified immunity.  The Court found that Defendant Ring was not entitled to qualified

1 immunity and denied all other grounds for relief advanced in Defendants' Amended
2 Renewed Motion for Judgment as a Matter of Law.

3       Plaintiffs filed a supplemental motion for attorney's fees in the amount of
4 $14,812.50, requesting that the Court incorporate the previous memorandum of points
5 and authorities filed in support of her first motion for attorney's fees.

6 II.    **DISCUSSION**

7     A.    <u>Attorney's Fees for Prevailing Parties Pursuant to 42 U.S.C. § 1988</u>

8       Section 1988, which authorizes the district courts to award a reasonable
9 attorney's fee to prevailing parties in civil rights litigation, was enacted to ensure that
10 private citizens have a meaningful opportunity to vindicate their rights protected by the
11 Civil Rights Acts. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937
12 (1983). *See* S.Rep. No. 94-1011, p.2 (1976).

13     Defendants do not dispute Plaintiffs contention that Plaintiffs were the prevailing
14 party in this case. See Defendants Rings' Response to Motion for Attorney's Fees and
15 Non-Taxable Costs at 1. Defendants do dispute Plaintiffs entitlement to a fee award in
16 the amount Plaintiffs request.

17     B.    <u>Calculation of the Lodestar Figure</u>

18       Although the standard for making the threshold determination that a plaintiff is
19 a "prevailing party" in order to recover an attorney's fee under § 1988 is a "generous
20 formulation that brings the plaintiff only across the statutory threshold" it remains for
21 the district court to determine what fee is "reasonable." *Hensley*, 461 U.S. at 433, 103
22 S.Ct. at 1939. The district court, in light of a superior understanding of the litigation
23 and the desirability of avoiding frequent appellate review of what essentially are factual
24 matters, has a great deal of discretion in determining the reasonableness of the attorney
25 fees charged in a case. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir.1992) (citing
26 *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933,1941 "*It remains important,*
27 *however, for the district court to provide a concise but clear explanation of its reasons*

28

- 3 -

*for the fee award.*" *Id.* (citing *Hensley*, 461 U.S. at 437) (emphasis added). The "concise but clear" language requires that the district court must give at least some indication of how it arrived at the amount of compensable hours for which fees were awarded to allow for meaningful appellate review, however, the district court is not required to give "an elaborately reasoned, calculated, or worded order." *Id.* (citing *Cunningham v. County of Los Angeles*, 879 F.2d 481, 485 (9th Cir.1988)). "[A] brief explanation of how the court arrived at its figures will do." *Id.*

Finally, "[d]espite the "concise but clear" requirement, in cases where a voluminous fee application is filed in exercising its billing judgment the district court is not required to set forth an hour-by-hour analysis of the fee request." *Id.* (citing *see, e.g.*, *Jacobs v. Mancuso*, 825 F.2d 559, 562 (1st Cir.1987); *In re "Agent Orange" Product Liability Litigation*, 818 F.2d 226, 237-38 (2d Cir.1987) ("no item-by-item accounting of the hours disallowed is necessary or desirable"); *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 657-58 (7th Cir.1985)). Furthermore, "the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure "as a practical means of trimming the fat from a fee application." *Id.* (citing *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983); *Daggett v. Kimmelman*, 811 F.2d 793, 797-98 (3d Cir.1987); *Tomazzoli v. Sheedy*, 804 F.2d 93, 97-98 (7th Cir.1986); *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202-03 (10th Cir.1986) (77% reduction in hours).

The starting point for determining a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. The result of this calculation is commonly called the "lodestar" figure.

- 4 -

1.  *Johnson-Kerr Factors*

The amount of attorney fees is also determined on the facts of each case. *Id.* at 429-430, 103 S.Ct. at 1937. In *Hensley*, the Supreme Court explained that generally courts consider twelve factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n. 3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir.1974)). The Ninth Circuit Court of Appeals adopted these factors in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1976), and they are included in this District's Local Rules, L.R.Civ 54.2 (c)(3). Properly excluded from this calculation are hours not "reasonably expended," such as excess, redundant, or otherwise unnecessary hours. *Id*. At 434, 103 S.Ct. at 1939.

2.  *Reasonable fee*

Several factors support a reasonable fee of the requested hourly rate of $250 for attorney services and an hourly rate of $65 for paralegal services in this matter.

Exhibits E and F to Plaintiffs' Memorandum (Doc. No. 115) demonstrate, by affidavit, that long time members of the local bar, with experience in civil rights litigation, would consider $250 per hour to be at a minimum, the customary rate of compensation for such work. In addition, this Court is aware that any attorney attempting to litigate these types of cases against governmental entities and employees must possess, as Plaintiffs' counsel does, the experience, reputation, and ability that is typically associated with this rate of compensation. Defendant does not contest the reasonableness of these fees.

3. *Hours reasonably expended*

Plaintiffs document a total of 714.80 attorney hours on the first motion for attorney's fees and 59.25 attorney hours on the supplemental motion for attorney's fees, for a total of 774.05. Plaintiff documents 70.40 paralegal hours.

a. <u>Defendants' objections relating to specific entries</u>

Defendants note numerous instances in Plaintiffs' application for fees of counsel's "lumping together" of two or more distinct tasks into one time entry without accounting for the time spent on each task and with no way of determining how much time was devoted to each individual unrelated task performed. Other "sloppy" practices, including failure to comply with the dictates of the rule regarding phone calls, failure to account for time devoted to legal research, failure to identify the activities associated with the preparation of pleadings and other papers, failure to distinguish which issues were the subject of the "Research," "Review and Analysis,' and other entries related to the motions for Summary Judgment, and other billing errors which make it "impossible to tell which entries might or might not have contributed to successful representation in this case," are objected to by Defendants.

First, despite the undesirability of this practice, the Magistrate Judge, as discussed in greater detail below, recommends that the District Court reach a determination that all of the claims in this case are related, and thus, the Court need not determine the amount of time counsel spent on unsuccessful tasks, or "whether and to what amount" each distinct task "might have contributed to ultimate success" but, rather, will take into consideration the results obtained, again, as discussed in greater detail below, as one factor in determining an appropriate fee in this case.

Defendants also object to entries that appear to be excessive for the tasks involved. The first of these are entries from March 9, 2005, March 10, 2005 and April 14, 2005, that indicate that Plaintiffs counsel spent over thirteen hours in "Review and Analysis" of the report and exhibits from expert Ann Marie Wolf. These same reports

- 6 -

1  had been analyzed three years earlier for approximately 12 hours.  Defendants also
2  questioned the need to spend seven hours preparing this expert to testify.  Defendant
3  also questioned five hours in "Review and Analysis" of client's medical records and a
4  conference with Dr. Donnelly, but no medical records were produced at trial, and Dr.
5  Donnelly did not testify at trial.  Defendants also object to nearly 65 hours of effort
6  devoted to the unsuccessful representation before the Civil Service Commission.

7        To the extent counsel spent twelve hours re-analyzing the Wolf report, the Court
8  will subtract the duplicative time of twelve hours from the lodestar calculation.  The
9  court will not reduce the amount based on Dr. Donnelly's failure to testify at trial, as
10 it is not an uncommon occurrence to interview and even prepare witnesses that
11 subsequent changes in trial strategy render unnecessary.  The Court will discuss in
12 greater detail, below, the lack of success in counsel's representation of Plaintiff in both
13 the motion for summary judgment and the administrative proceedings, and will not
14 further reduce the amount here, as this would result in a double reduction.  This results
15 in a reduction of 12 hours for a total of 762.05 attorney's hours.

16       Defendants also suggest that paralegal hours were excessive, duplicative, and/
17 or unrelated to the outcome of the trial, and that it is "highly unusual for an attorney to
18 be billing for what appears to be every conference with a member of his clerical staff."
19 First, there is no way of telling from the application if counsel is billing for every
20 conference with a member of his clerical staff, since the only conferences represented
21 are those for which he is submitting billable hours.  Second, Defendants criticize the
22 paralegal's practice of "reviewing and analyzing" transcripts in separate billable
23 sessions from the actual preparation of summaries of the transcripts as duplicative
24 because it is common for legal assistants to summarize transcripts of depositions as they
25 ream them.  Aside from Defense counsel's personal knowledge of the common practice
26 of legal assistants at his place of business, there is no other evidence that these hours
27 are duplicative.  Nor does 70 hours of legal assistance over the entire course of

28

litigation in this case lasting nearly five years and resulting in a 7 day trial seem excessive. The Magistrate Judge will not recommend a reduction in hours submitted as work attributed to the paralegal.

Accordingly, the Magistrate Judge determines that the District Court find that the number of hours reasonably expended include 762.05 hours for work performed by Plaintiffs' attorney, and 70.40 hours for work performed by Plaintiffs' paralegal. This results in a lodestar figure of 762.05 times $250, or $190512.50 for attorney hours, plus $65 times 70.40, or $4576.00 for paralegal work, or a total of $195,088.50

b.  Related claims and degree of success

"In *Hensley* the Supreme Court noted that the 'results obtained' was one factor that might lead the district court to adjust the presumptively reasonable lodestar calculation and that this factor 'is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded only on some of his claims for relief." ' *Deukmejian*, 987 F.2d at 1404 (quoting *Hensley*, 461 U.S. at 434.). In that situation, two questions must be addressed. First did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award? *Hensley* at 434, 103 S.Ct. at 1940.

First, as Defendants acknowledge, a mathematical approach comparing the total number of issues in the case with those actually prevailed upon is unwarranted. *See Id.* at 435, n. 11, 103 S.Ct. at 1940, n.11.

The court must first determine if the claims are related. *Id*. at 434-35, 103 S.Ct. at 1940.

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants-often an institution and its officers, as in this case-counsel's work on one claim will be unrelated to his work on another claim.

- 8 -

> Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved."

*Id.* (Citations omitted).

Claims are unrelated if the successful and unsuccessful claims are "'distinctly different' *both* legally *and* factually" and related if they "involve a common core of facts *or* are based on related legal theories. *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (quoting *Webb v. Sloan*, 330 F.3d 1158, 1169 (quoting *Schwarz v. Sec'y of Health and Human Serv.*, 73 F.3d 895, 902-03 (9th Cir. 1995))(emphasis in the original). "At bottom, 'the focus is on whether the unsuccessful and successful claims arose out of the same 'course of conduct.' " *Dang*, at 813, (quoting *Webb*, at 1169).

Plaintiffs contend that the "crux of the entire litigation was the violation of 42 U.S.C. § 1983 retaliation for exercise of First Amendment Rights by Plaintiff" and that this was also the basis for the liability found by the jury verdict in this matter. Plaintiffs also contend that the counts which were eventually dismissed were also related to the same activity - retaliation for exercise of Plaintiff's First Amendment Rights.

Defendants contend that the claims were not related, specifically Plaintiff's claim that her difficulty in obtaining an ADA accommodation was a result of retaliation for her call to Dan Uthe.

All of the claims however, including those which were dismissed, all revolved around a central factual core involving the sulfuric acid spill located at the TARP site in July, 1997; Plaintiff's involvement in reporting the illegal hazard and Plaintiff's experience thereafter in employment relationships with her supervisors and co-employees. (See Amended Complaint, Doc. No. 28.) Despite Defendants contention that any connection between Plaintiff's call to Dan Uthe and her inability to obtain ADA accommodations was "purely imaginary, and proved to be wholly lacking in connection with the claim against Mike Ring" the ADA claims were, in fact, dismissed as time barred or for lack of jurisdiction, and were never found by the District Judge to

be "wholly lacking in connection with the claim against Mike Ring."  (See Order dated August 1, 2003,  Doc. No. 53) A claim is not "unrelated" because it is unsuccessful.

The Magistrate Judge finds that Plaintiffs' claims involve a common core of facts and legal theories, such that differentiating claims between those that were successful and those that were not is both impractical and unnecessary, and fails to consider the relative importance and interrelation of issues, as well as the extent to which efforts in advancing the unsuccessful claims were material and relevant to the successful claim.

It is not enough however, under *Hensley*, to be merely related, "[i]f ...a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith. ...Again, the most critical factor is the degree of success obtained." *Hensley*, at 436, 103 S.Ct. at 1941.

In a prisoner civil rights action in which a plaintiff was successful on a claim for retaliation against four defendants, but unsuccessful against four others, had causes of action for denial of medical treatment and access to the courts decided against him by way of summary judgment, and, moreover, obtained only a fraction of the damages he sought and only a part of his desired injunctive relief, the Court of Appeals for the Ninth Circuit, vacated the district court's award granting attorneys fees for all hours expended on the litigation. The Ninth Circuit determined that, unless plaintiff's counsel expended *no* time pursuing the claims on which plaintiff was unsuccessful, the district court's conclusion that all hours were directly and reasonably incurred in proving an actual violation of plaintiff's rights cannot be correct.  The Ninth Circuit held that, the district court did not therefore properly consider plaintiff's degree of success in arriving at a reasonable fee award. *Dannenberg v. Valadez*, 338 F.3d 1070, 1075-76 (9th Cir. 2003).

1    Like *Dannenberg*, the Plaintiffs in this case were not successful in all of their
2 claims. Under *Dannenberg*, therefore, it would be erroneous for this Court to award
3 plaintiffs the attorney's fees for all of the hours requested. Defendants assert that
4 Plaintiffs' application makes it impossible for the Court to make a determination,
5 pursuant to *Hensley*, as to which hours were reasonably spent advancing the successful
6 claim.

7    *Hensely*, however, contemplates such cases, such as the instant one, where
8 "plaintiff's claims for relief will involve a common core of facts or will be based on
9 related legal theories. Much of counsel's time will be devoted generally to the litigation
10 as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.
11 Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court
12 should focus on the significance of the overall relief obtained by the plaintiff in relation
13 to the hours reasonably expended on the litigation." *Hensley*, at 434, 103 S.Ct. at 1940.
14 Thus, in cases such as the one before the Court, *Hensley* leaves the determination to the
15 court's discretion, suggesting that "excellent results" result in full recovery or perhaps
16 even an enhanced award, or, in the situation where only partial or limited success is
17 achieved, a reduction in the award, however, there is "no precise rule or formula for
18 making these determinations. *The district court may attempt to identify specific hours*
19 *that should be eliminated, or it may simply reduce the award to account for the limited*
20 *success*. The court necessarily has discretion in making this equitable judgment"
21 *Hensely*, at 435-36, 103 S.Ct. 1940-41. (Emphasis added).

22    It seems evident that the majority of time spent in preparation for trial was fully
23 reasonable, resulted in satisfactory results (an award of both compensatory and punitive
24 damages), and should not be reduced simply because the plaintiff failed to prevail on
25 every claim that was submitted to the jury. Plaintiff was also successful withstanding
26 Defendants renewed motion for judgment as a matter of law, following jury disposition
27 of this case. Plaintiff was, however, unsuccessful in filing a motion to remand, as well

28

as unsuccessful on administrative claims, and a majority of claims in the motion for summary judgment.

### b. Other factors

Additionally, other factors that the Court has considered in calculating an equitable award are 1) the preclusion of employment by the attorney due to acceptance of this case which lasted over 5 years; and 2) the "undesirability" of the case, and 3) the length of time between the offending occurrence and Plaintiffs' recovery, all factors in favor of Plaintiffs in this instance

## III. CONCLUSION

Because the Court is obliged to provide an explanation of its calculations, yet conscious of the Supreme Court's disregard for a direct mathematical approach comparing the total number of issues in the case with those actually prevailed upon, the Court will provide the rationale for its final "discretionary" percentage cut of the fee.

First, the Court considers that, while roughly half of the attorney time logged in this case was spent, rather unsuccessfully, prior to the motion for summary judgment, roughly half of the attorney time logged in this case was spent, rather successfully, after the motion for summary judgment. The Court begins, therefore, with a fifty percent reduction figure. Thereafter, the Court considers that some of the attorney time logged prior to the motion for summary judgment was spent on issues that were ultimately intertwined or related to successful issues, which would be roughly balanced with issues that were pursued after the motion which were ultimately unsuccessful. Bringing the figure full circle, back to fifty percent[1].

---

[1] While both parties proffered settlement demands as a measure of the success of the litigation, which would be one method of calculating the success of the litigation, the figures were too disparate to provide much guidance in formulating a percentage reduction or enhancement to the lodestar figure. For example, Defendants noted that Plaintiffs demanded $800,000 prior to

- 12 -

1    The Court adds ten percent back to the number to take into account the three
2 additional factors mentioned above: preclusion of employment, undesirability of the
3 case, and length of time, for a total reduction of forty percent of the lodestar figure.

4    The Magistrate Judge notes that this is an *equitable* determination, not an exact
5 calculation, taken after a review of the entire record in this case, and also takes into
6 account the Magistrate Judge's own experience in determining the appropriate measure
7 of success.

8    Applying the percentage reduction above results in a final reduction of 40
9 percent of the lodestar figure. This equals $195,088.50 times 60%, or $117,053.10.

10 **IV.   RECOMMENDATION**

11    The Magistrate Judge recommends that the District Judge GRANT IN PART
12 AND DENY IN PART Plaintiffs' Supplemental Motion for Attorney's Fees and
13 Related Non-Taxable Expenses (Doc. No. 143) and award Plaintiffs attorney's fees in
14 the amount of $117,053.10.

15    Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections
16 within ten days after being served with a copy of this Report and Recommendation. A
17 party may respond to another party's objections within ten days after being served with
18 a copy thereof. Fed.R.Civ.P. 72(b).  If objections are filed, the parties should use the
19 following case number:  **CV 01-0053-TUC-FRZ.**

---

settlement, which would seem to suggest that they were only 10% successful, and thus, consequently should have the lodestar reduced by 90%. Plaintiffs on the other hand noted that Defendants refused to offer more than $7,000 in settlement, which would seem to suggest that Plaintiffs were 1,100% successful. Accordingly, the Magistrate Judge rejects this measure as a calculation of success.

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 31st day of August, 2007.

_____
Bernardo P. Velasco
United States Magistrate Judge